Omer Salik (SBN 223056)
Carter Arnett PLLC
111 Pier Ave., Suite 101
Hermosa Beach, California 90254
Tel: (214) 550-8188
Fax: (214) 550-8185
osalik@carterarnett.com

Attorneys for Plaintiff
Marisa Paolone

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARISA PAOLONE, an individual, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>  vs.<br><br>ADJHA NY&CO. LLC and NYCO IP LLC,<br><br>    Defendants. | Case No.: 26-cv-3142<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Pursuant to Fed. R. Civ. P. 15(a)(1)(B), Plaintiff Marisa Paolone ("Plaintiff"), on behalf of herself and all others similarly situated, hereby alleges the following at all times relevant to this amended complaint:

## I.    INTRODUCTION

1.    This action is brought against Defendant ADJHA NY&Co. LLC and Defendant NYCO IP LLC (collectively, "NY&Co" or "Defendants") for their false and deceptive pricing practices in connection with their sale of clothing on the website https://www.nyandcompany.com/ ("Website"). Defendants offer direct-to-consumer sale of clothing through the Website for their own branded products.

2.    Defendants advertise fake and inflated comparison reference prices to deceive customers into a false belief that the sale price is a deeply discounted bargain price. For example, anyone visiting the Website on a given day will see a variety of clothing products advertised as being "on sale" in comparison to a crossed-out reference price.  Such consumers are being misled by this advertising because those clothes have rarely, if ever, been sold in the recent past on the Website or through other retailers for the reference price. In other words, Defendants' advertised "sales" for all or nearly all of their products are not really sales at all. It is a misrepresentation that Defendants repeat.

3.    The reference prices on the Website are fake and designed to mislead consumers. They are not original, regular, retail, or former prices. They are inflated prices posted to lure unsuspecting customers into jumping at a fictitious "bargain" and intended to mislead customers into believing that the value of the products they are buying is higher than reality. That is, Defendants engage in this deceptive advertising and pricing scheme to give customers the false impression that they are getting a deal or bargain when in reality they are being swindled by fake sales and promotions. As a result, customers are deceived into spending money they otherwise would not have spent, purchasing items they otherwise would not have purchased, and/or spending more money for an item than they otherwise would have absent the

CLASS ACTION COMPLAINT

deceptive marketing.

4.    By this action, Plaintiff seeks to recover restitution and damages on behalf of all persons who have fallen victim to Defendants' sham sales by purchasing products from the Website.

## II.    PARTIES

5.    Plaintiff Marisa Paolone is a citizen of the State of California and resident of the County of Los Angeles.

6.    On information and belief, Defendant ADJHA NY&Co. LLC is a Delaware company with its principal place of business in New York, New York.

7.    On information and belief, Defendant NYCO IP LLC is a Delaware company with its principal place of business in New York, New York.

8.    On information and belief, Defendants act in concert with each other in connection with the operation and sale of products on the Website.

## III.    JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 and 28 U.S.C. § 1332 because the total matter in controversy exceeds $5 Million and there are over 100 members of the proposed class. Further, at least one member of the proposed class is a citizen of California and Defendants are each a citizen of New York.

10.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

11.    Venue is also proper pursuant to 28 U.S.C. § 1391(b)(1), (c)(2), and (c)(3) because Defendants are subject to the Court's personal jurisdiction in this judicial district.

12.    Defendants conduct, and at all relevant times, have conducted business in California through the Website, including making sales to California residents and delivering products into California.

## IV.   GENERAL ALLEGATIONS

### a.   Defendants' False and Deceptive Pricing Scheme

13.   Defendants' business model relies, in part, on deceiving customers with fake sales. On a typical day, Defendants prominently display on the Website some form of a sale where the advertised clothes are purportedly marked down by a dollar amount. All or nearly all the clothes are represented as being marked down by the specified discount from a substantially higher reference price (hereafter, the "Reference Price"). The supposed markdowns are represented to the customer by prominently displaying a crossed-out Reference Price next to the sale price. Defendants employ these deceptive tactics to convey to customers that the product had previously sold in the recent past at the Reference Price and were being sold to the customer at a substantial discount.

14.   However, this Reference Price is almost always, if not always, a falsely inflated price because Defendants rarely, if ever, sold the products at the Reference Price. The only purpose of the Reference Price is to mislead customers into believing that the displayed Reference Price is a prevailing, original, regular, or retail price at which Defendants usually sell the item or previously sold the item in the recent past. As a result, Defendants falsely convey to customers that they were receiving a substantial markdown or discount, when in reality the alleged discount is false and fraudulent.

15.   Below is a representative example from the Website using False Reference Prices:

CLASS ACTION COMPLAINT



BRANDS WE LOVE

Straight Leg Pants With Back Zipper

**$15.99** ~~$78.00~~

$50 OFF $200 code TAKE50

16.     In the example shown above, the advertised pants have a Reference Price of $78 that is crossed out with a purported sale price of $15.99. Consumers reasonably understand that the advertised pants have a prevailing or ordinary price of $78 and are being sold at a discount. In reality, the pants have never (or rarely) been sold for $78.

17.     Defendants deploy this misleading tactic across nearly all of the products offered for sale on the Website. For example, as shown in Exhibit A hereto, nearly all of the clothes advertised on the Website on March 20, 2026 are being advertised as being on sale.

18.     Internet archives show that the Website similarly advertised nearly all of

its clothes as being on sale on February 10, 2026:



19.    The Website has engaged in the use of the fake sales for years. For example, in 2019, Defendants' predecessors entered into a class action settlement in connection with the Website for advertising using fake sales as alleged herein. *See Rael, et al. v. RTW Retailwinds Inc., et al.*, Case No. 37-2019-00003850-CU-MC-CTL, in the Superior Court of California County of San Diego. In 2023, Defendants' predecessors were again sued for the same conduct. *See Metchell, et al. v. NY and Co Ecomm LLC, et al*, Case No. 2:23-cv-10117 (C.D.Cal.). Nonetheless, Defendants have continued the same false advertising on the Website.

20.    On information and belief, Defendants have superior access and knowledge of the historic pricing and sale advertisements on the Website than Plaintiff.

21.    These pricing and advertising practices are high-pressure fake sales that are deceptive. They are intended to mislead customers into believing that they are getting a bargain by buying products from Defendants supposedly on sale and at a substantial and deep discount. The truth is that Defendants rarely, if ever, sell any of the Website's products at the Reference Price. The Reference Price is, therefore, an

artificially inflated price. In turn, the advertised discounts are thus nothing more than phantom markdowns.

22.    The products sold on the Website are substantially similar products that Defendants market in a substantially similar way using false Reference Prices.

### b. Plaintiff's Purchase of Falsely Advertised Items

23.    Plaintiff fell victim to Defendants' false advertising and deceptive pricing practices.

24.    Between March and May, 2023, Plaintiff visited the Website and saw a purported sale promotion on the clothes being offered for sale on the Website. Plaintiff made three purchases from the Website with each product being advertised at a purported discount.

25.    Below is an image from the Website on March 28, 2023, captured by http://wayback.archive.org of the sale promotion the Website was advertising at the time of Plaintiff's purchase:



26.    Below is an image from the Website from May 11, 2023, captured by http://wayback.archive.org of the sale promotion the Website was advertising at the time of Plaintiff's purchase:



27.    Plaintiff browsed the Website and observed sale offers substantially

7

similar to those shown above. Plaintiff saw that the clothes on the Website were supposedly on sale based on the advertised discounted offer and based on a markdown from a Reference Price. The Reference Price was displayed as a substantially higher price against which the sale price was compared.

28.    Plaintiff made various purchases from the Website with the following order details:

- Order number o5186651597 totaling $99.23
- Order number N2525600 totaling $27.85
- Order number o5688595267 totaling $135.50

29.    Before doing so, Plaintiff relied on the representation that these items had in fact been offered for sale, or previously sold, in the recent past at the stated Reference Price. Plaintiff relied on the Website's representation that the items she purchased were truly discounted and being sold at a substantial markdown.

30.    The truth, however, is that the items Plaintiff purchased were not substantially marked down or discounted, or at the very least, any discount she was receiving had been grossly exaggerated. That is because the items Plaintiff bought had not been offered for sale on the Website (or anywhere else) for any reasonably substantial period of time (if ever) at the full Reference Price.

31.    For example, based on internet archives, the Website advertised 40-50% sales on all items on January 12, 2023, January 25, 2023, January 31, 2025, February 13, 2023, March 14, 2023, March 21, 2023, March 22, 2023, March 24, 2023, and March 27, 2023 and April 3, 2023. *See* Exhibit A.

32.    On information and belief, Defendants manufacture and sell the clothes offered for sale on the Website and sets the prices for those items. Accordingly, Defendants know at what prices the items sell and whether the Reference Prices are the prevailing prices for each item.

33.    Defendants know that the Reference Prices are fake and artificially inflated and intentionally uses them in its deceptive pricing scheme on the Website to

8

CLASS ACTION COMPLAINT

increase sales by misleading Plaintiff and members of the putative class to believe that they are buying products at a substantial discount. Defendants thereby induce customers to buy products they never would have bought—or at the very least, to pay more for merchandise than they otherwise would have – if Defendants were simply being truthful about the prevailing price of its products.

34.     Plaintiff reasonably relied on the Reference Price in making her purchases as a representation of the products' value and as a representation of the discount she was receiving. This information was material to her decision to purchase the items and material to the price she was willing to pay.

35.     Therefore, Plaintiff would not have purchased the items, or at the very least, would not have paid as much as she did, had Defendants been truthful. Plaintiff was persuaded to make these purchases because of the fake sales based on the Website's fake Reference Price.

36.     Plaintiff would not have been willing to pay as much as she did for the items she purchased had she received complete and truthful information relating to Defendants' Reference Price. Plaintiff is entitled to restitution and damages at least in the form of the difference between the price she actually paid and the price a reasonable consumer would have paid absent the false Reference Prices.

37.     Plaintiff was further harmed because the price she paid for the items was less than the value she received.

38.     Plaintiff was further harmed because she did not receive the expected discount or benefit-of-the-bargain advertised by the Website.

      **c.  Research Shows That the Use of Reference Price Advertising Schemes Similar to Defendants' Influences Consumer Behavior and Affects Consumers' Perception of a Product's Value**

39.     The effectiveness of Defendants' deceitful pricing scheme is backed up by longstanding scholarly research. In the seminal article entitled *Comparative Price Advertising: Informative or Deceptive?* (cited in *Hinojos v. Kohl's Corp.*, 718 F.3d

9

1098, 1106 (9th Cir. 2013)), Professors Dhruv Grewal and Larry D. Compeau write that, "[b]y creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product." Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, 11 J. Pub. Pol'y & Mktg. 52, 55 (Spring 1992). Thus, "empirical studies indicate that, as discount size increases, consumers' perceptions of value and their willingness to buy the product increase, while their intention to search for a lower price decreases." *Id*. at 56. For this reason, the Ninth Circuit in *Hinojos* held that a plaintiff making a claim of deceptive pricing, as Plaintiff claims here, had standing to pursue claims against the defendant retailer. In doing so, the Court observed that "[m]isinformation about a product's 'normal' price is . . . significant to many consumers in the same way as a false product label would be." *Hinojos*, 718 F.3d at 1106.

40.    Professors Compeau and Grewal reached similar conclusions in a 2002 article: "decades of research support the conclusion that advertised reference prices do indeed enhance consumers' perceptions of the value of the deal." Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Believe It Or Not*, J. of Consumer Affairs, Vol. 36, No. 2, at 287 (Winter 2002). The professors also found that "[c]onsumers are influenced by comparison prices even when the stated reference prices are implausibly high." *Id*.

41.    In another scholarly publication, Professors Joan Lindsey-Mullikin and Ross D. Petty concluded that "[r]eference price ads strongly influence consumer perceptions of value…Consumers often make purchases not based on price but because a retailer assures them that a deal is a good bargain. This occurs when . . . the retailer highlights the relative savings compared with the prices of competitors . . . [T]hese bargain assurances (BAs) change consumers' purchasing behavior and may deceive consumers." Joan Lindsey-Mullikin & Ross D. Petty, *Marketing Tactics Discouraging Price Search: Deception and Competition*, 64 J. of Bus. Research 67

(January 2011).

42.     Similarly, according to Professors Praveen K. Kopalle and Joan Lindsey-Mullikin, "research has shown that retailer-supplied reference prices clearly enhance buyers' perceptions of value" and "have a significant impact on consumer purchasing decisions." Praveen K. Kopalle & Joan Lindsey-Mullikin, *The Impact of External Reference Price On Consumer Price Expectations*, 79 J. of Retailing 225 (2003).

43.     The results of a 1990 study by Professors Jerry B. Gotlieb and Cyndy Thomas Fitzgerald, came to the conclusion that "reference prices are important cues consumers use when making the decision concerning how much they are willing to pay for the product." Jerry B. Gotlieb & Cyndy Thomas Fitzgerald, *An Investigation Into the Effects of Advertised Reference Prices On the Price Consumers Are Willing To Pay For the Product*, 6 J. of App'd Bus. Res. 1 (1990). This study also concluded that "consumers are likely to be misled into a willingness to pay a higher price for a product simply because the product has a higher reference price." *Id*.

44.     The clear inference to be drawn from this research and the Ninth Circuit's opinion in *Hinojos* is that the deceptive advertising through the use of false reference pricing employed here by Defendants is intended to, and does in fact, influence customer behavior—as it did Plaintiff's purchasing decision here—by artificially inflating customer perceptions of a given item's value and causing customers to spend money they otherwise would not have, purchase items they otherwise would not have, and/or spend more money for a product than they otherwise would have absent the deceptive advertising.

## V.     CLASS ACTION ALLEGATIONS

45.     Plaintiff brings this action on behalf of herself and all persons similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure and seeks certification of the following class:

All persons in the State of California who purchased one or more items

11

from the Website on or after March 2022 at a stated discount from a higher reference price and who have not received a refund or credit for their purchase(s).

46.     The above-described class of persons shall hereafter be referred to as the "Class." Excluded from the Class are any and all past or present officers, directors, or employees of Defendants, any judges who preside over this action, and any partner or employee of Class Counsel. Also excluded from the Class are any members who are bound by mandatory arbitration and class waiver agreements.

47.     Plaintiff reserves the right to expand, limit, modify, or amend the class definitions stated above, including the addition of one or more subclasses, in connection with their motion for class certification, or at any other time, based upon, among other things, changing circumstances, or new facts obtained during discovery.

48.     **Numerosity.** The Class is so numerous that joinder of all members in one action is impracticable. The exact number and identities of the members of the Class is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, but on information and belief, Plaintiff alleges that there are hundreds of members of the Class.

49.     **Typicality.** Plaintiff's claims are typical of those of other members of the Class, all of whom have suffered similar harm due to Defendants' course of conduct as described herein.

50.     **Adequacy of Representation.** Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Plaintiff has retained attorneys who are experienced in the handling of complex litigation and class actions, and Plaintiff and her counsel intend to prosecute this action vigorously.

51.     **Existence and Predominance of Common Questions of Law or Fact.** Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary among members of the

Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

(a)     Whether, during the relevant time, Defendants advertised false Reference Prices with respect to products on the Website.

(b)     Whether, during the relevant time, Defendants advertised price discounts from false Reference Prices with respect to products on the Website.

(c)     Whether the products on the Website were offered at their Reference Prices for any reasonably substantial period of time prior to being offered at prices that were discounted from their Reference Prices.

(d)     Does Defendants' deceptive pricing scheme using false Reference Prices constitute an "unlawful," "unfair," or "fraudulent" business practice in violation of the California Unfair Competition Law, Cal. Bus & Prof. Code § 17200, et seq.?

(e)     Does Defendants' deceptive pricing scheme using false Reference Prices constitute "unfair, deceptive, untrue or misleading advertising" in violation of the California Unfair Competition Law, Cal. Bus & Prof. Code § 17200, *et seq*.?

(f)     Does Defendants' deceptive pricing scheme using false Reference Prices constitute false advertising in violation of the California False Advertising Law under Business & Professions Code section 17500, *et seq*.?

(g)     Does Defendants' deceptive pricing scheme using false Reference Prices constitute a violation of the California Legal Remedies Act California Civil Code §§1750, *et seq*.?

(h)     Whether Defendants' Reference Prices are false.

(i)   Whether and when Defendants knew or learned that Reference Prices on the Website were false.

(j)   What did Defendants hope to gain from using a false Reference Price scheme?

(k)   What did Defendants gain from their false Reference Price scheme?

(l)   Whether Defendants' use of false Reference Prices was material.

(m)   Whether Defendants had a duty to disclose to its customers that the Reference prices were fake "original" prices in furtherance of sham sales.

(n)   To what extent did Defendants' conduct cause, and continue to cause, harm to the Class?

(o)   Whether the members of the Class are entitled to damages and/or restitution.

(p)   What type of injunctive relief is appropriate and necessary to enjoin Defendants from continuing to engage in false or misleading advertising?

(q)   Whether Defendants' conduct was undertaken with conscious disregard of the rights of the members of the Class and was done with fraud, oppression, and/or malice.

52.   **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable. Requiring each individual class member to file an individual lawsuit would unreasonably consume the amounts that may be recovered. Even if every member of the Class could afford individual litigation, the adjudication of at least thousands of identical claims would be unduly burdensome to the courts. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple

CLASS ACTION COMPLAINT

trials of the same factual issues. By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented herein, presents no management difficulties, conserves the resources of the parties and of the court system, and protects the rights of the members of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. The prosecution of separate actions by individual members of the Class may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members of the Class who are not parties to such adjudications, or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

53. **Ascertainability.** Upon information and belief, Defendants keeps extensive computerized records of their sales and customers through, among other things, databases storing customer orders, customer order histories, customer profiles, and general marketing programs. On information and belief, Defendants have one or more databases through which a significant majority of members of the Class may be identified and ascertained, and they maintain contact information, including email addresses and home addresses (such as billing, mailing, and shipping addresses), through which notice of this action is capable of being disseminated in accordance with due process requirements.

## VI.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE §17200, *et seq.*)

**(By Plaintiff Against Defendants Individually and on Behalf of the Class)**

54. Plaintiff restates and re-alleges the foregoing paragraphs as if fully set forth herein.

55. California Business and Professions Code section 17200 *et seq.*, also known as the California Unfair Competition Law ("UCL"), prohibits acts of "unfair

competition," including any "unlawful, unfair or fraudulent business act or practice" as well as "unfair, deceptive, untrue or misleading advertising."

56.     A cause of action may be brought under the "unlawful" prong of the UCL if a practice violates another law. Such an action borrows violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under the UCL.

57.     Here, by engaging in false advertising, as well as the false, deceptive, and misleading conduct alleged above, Defendants have engaged in unlawful business acts and practices in violation of the UCL, including violations of state and federal laws and regulations, such as 15 U.S.C. § 45(a)(1), 16 C.F.R. § 233.1, California Business & Professions Code sections 17500 and 17501, and California Civil Code sections 1770(a)(9) and 1770(a)(13).

58.     The Federal Trade Commission Act ("FTCA") prohibits "unfair or deceptive acts or practices in or affecting commerce[.]" 15 U.S.C. § 45(a)(1). Under FTC regulations, false former pricing schemes similar to the ones employed by Defendants, are deceptive practices that would violate the FTCA:

(a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.

(b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of her business, honestly and in good faith – and, of

course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

(c) The following is an example of a price comparison based on a fictitious former price. John Doe is a retailer of Brand X fountain pens, which cost him $5 each. His usual markup is 50 percent over cost; that is, his regular retail price is $7.50. In order subsequently to offer an unusual "bargain," Doe begins offering Brand X at $10 per pen. He realizes that he will be able to sell no, or very few, pens at this inflated price. But he doesn't care, for he maintains that price for only a few days. Then he "cuts" the price to its usual level—$7.50—and advertises: "Terrific Bargain: X Pens, Were $10, Now Only $7.50!" This is obviously a false claim. The advertised "bargain" is not genuine.

(d) Other illustrations of fictitious price comparisons could be given. An advertiser might use a price at which he never offered the article at all; he might feature a price which was not used in the regular course of business, or which was not used in the recent past but at some remote period in the past, without making disclosure of that fact; he might use a price that was not openly offered to the public, or that was not maintained for a reasonable length of time, but was immediately reduced.

59. The FTCA also prohibits the pricing scheme employed by Defendants regardless of whether the product advertisement and representations use the words "regular," "original," or "former" price:

(e) If the former price is set forth in the advertisement, whether accompanied or not by descriptive terminology such as "Regularly," "Usually," "Formerly," etc., the advertiser should make certain that the former price is not a fictitious one. If the former price, or the amount or percentage of reduction, is not stated in the advertisement, as when the ad merely states, "Sale," the advertiser must take care that the amount of reduction is not so insignificant as to be meaningless. It should be sufficiently large that the consumer, if he knew what it was, would believe that a genuine bargain or saving was being offered. An advertiser who claims that an item has been "Reduced to $9.99," when the former price was $10, is misleading the consumer, who will understand the claim to mean that a much greater, and not merely nominal, reduction was being offered.

60. Further, Defendants' conduct as described herein also violates California false advertising laws. Specifically, California Business & Professions Code section 17500 provides, in relevant part, that it is unlawful for any corporation,

17

CLASS ACTION COMPLAINT

with intent directly or indirectly to dispose of personal property, to make or disseminate in any "manner or means whatever, including over the Internet, any statement, concerning that . . . personal property . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]"

61. California law also expressly prohibits false former pricing schemes like the one employed by Defendants. California Business & Professions Code section 17501, entitled "Worth or value; statements as to former price," states as follows:

> For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

> No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

62. Moreover, Defendants' conduct also violates the California Consumer Legal Remedies Act ("CLRA"). *See* Cal. Civ. Code §§ 1750, et seq. More specifically, Defendants violated the CLRA provisions prohibiting businesses from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions[.]" Cal. Civ. Code §1770(a)(13).

63. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

64. Here, Defendants' actions constitute "unfair" business acts or practices because, as alleged above, Defendants engage in a misleading and deceptive pricing

scheme by advertising and representing false Reference Prices and thereby falsely advertising and representing markdowns or "discounts" that are false and inflated. Defendants' deceptive marketing practice gives consumers the false impression that Defendants' products are regularly sold on the market for a substantially higher price in the recent past than they actually are and thus leads to the false impression that Defendants' products are worth more than they actually are. Defendants' acts and practices thus offend an established public policy, and they engage in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

65. The harm to Plaintiff and members of the Class outweighs the utility of Defendants' practices. There were reasonably available alternatives to further Defendants' legitimate business interests, other than the misleading and deceptive conduct described herein.

66. A business act or practice is "fraudulent" within the meaning of the UCL if members of the public are likely to be deceived.

67. Here, members of the public are likely to be deceived by Defendants' conduct as alleged above. Among other things, Defendants affirmatively misrepresent the Reference Prices of its products sold on the Website, which thereby misleads and deceives customers into believing that they were buying those products at substantially marked down and discounted prices. Defendants' deceptive marketing practice gives consumers the false impression that its products were regularly sold on the market for a substantially higher price in the recent past than they actually were and thus leads to the false impression that Defendants' products are worth more than they actually are.

68. In addition, Defendants had a duty to disclose the truth about its pricing deception, including, among other things, that the Reference Prices advertised and published on the Website were not, in fact, prices at which the products had sold for in the recent past for a reasonably substantial period of time, but that instead, in

reality, Defendants' products rarely (if ever) were offered at the advertised Reference Prices. Defendants, however, concealed this material information from customers and the general public. Members of the public, therefore, were also likely to be deceived by Defendants' failure to disclose material information.

69. Plaintiff and each member of the Class suffered an injury in fact and lost money or property as a result of Defendants' unlawful, unfair, and/or fraudulent business practices, and as a result of Defendants' unfair, deceptive, untrue or misleading advertising.

70. Plaintiff lacks an adequate remedy at law, because damages may not be available or adequately compensate her for the harm she suffered.

71. Plaintiff, on behalf of herself and the members of the Class, seeks restitution and disgorgement of all moneys received by Defendants through the conduct described above.

72. Plaintiff, on behalf of herself and the members of the Class, seeks a temporary, preliminary, and/or permanent injunction from this Court prohibiting Defendants from engaging in the patterns and practices described herein, including but not limited to, putting a stop to its deceptive advertisements and false Reference Prices.

## SECOND CLAIM FOR RELIEF

### VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW, CAL. BUS. & PROF. CODE §17500, *et seq.*

**(By Plaintiff Against Defendants Individually and on Behalf of the Class)**

73. Plaintiff restates the foregoing paragraphs as if fully set forth herein.

74. The California False Advertising Law, codified at California Business & Professions Code section 17500, et seq. (the "FAL") provides, in relevant part, that it is unlawful for any corporation, with intent directly or indirectly to dispose of personal property, to make or disseminate in any "manner or means whatever, including over the Internet, any statement, concerning that . . . personal property . . .

20

CLASS ACTION COMPLAINT

which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]" Cal. Bus. & Prof. Code § 17500. The "intent" required by section 17500 is the intent to dispose of property, and not the intent to mislead the public in the disposition of such property.

75. Similarly, another section of the FAL provides, in relevant part, that "no price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price . . . within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement." Cal Bus. & Prof. Code § 17501.

76. Here, Defendants routinely disseminate on their Website false Reference Prices for their products. Such statements are untrue, or at the very least, misleading. Among other things, Defendants rarely, if ever, offer the products advertised on the Website for sale at the Reference Prices displayed for each product. Further, Defendants rarely, if ever, offer the products advertised on the Website at the Reference Prices within the three months immediately preceding the publication of the Reference Prices.

77. Defendants thus mislead customers, including Plaintiff, into believing that the Reference Prices are or were genuine original, retail, or former prices and that the "sale" prices relative to the published Reference Prices, in fact, reflected real and substantial discounts. Defendants' deceptive marketing practice gave consumers the false impression that its products were regularly sold for a substantially higher price in the recent past than they actually were and thus led to the false impression that Defendants' products were worth more than they actually were.

78. Defendants engage in this deceptive conduct with the intent to dispose of personal property—namely, with the intent to increase the sale of the products offered for sale on the Website.

79.     Defendants knew, or by the exercise of reasonable care should have known, that its dissemination of Reference Prices for products on the Website were untrue and/or misleading. Among other things, Defendants represented the Reference Prices even though it knew, or in the exercise of reasonable care should have known, that such products had rarely, if ever, sold at the crossed-out Reference Prices.

80.     As a direct and proximate result of Defendants' misleading and false advertisements, Plaintiff and members of the Class have suffered injury in fact and have lost money. As such, Plaintiff requests that this Court order Defendants to restore this money to Plaintiff and all members of the Class, and to enjoin Defendants from continuing its false and misleading advertising practices in violation of California law in the future. Otherwise, Plaintiff, members of the Class, and the broader general public will be irreparably harmed and/or denied an effective and complete remedy.

### THIRD CLAIM FOR RELIEF

### VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT, CAL. CIV. CODE §1750, *et seq*.

**(By Plaintiff Against Defendants Individually and on Behalf of the Class)**

81.     Plaintiff restates and re-allege the foregoing paragraphs as if fully set forth herein.

82.     The Consumer Legal Remedies Act of 1970, Cal. Civ. Code sections 1750 *et seq*. (the "CLRA") is a California consumer protection statute which allows plaintiffs to bring private civil actions for "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction . . . which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). The purposes of the CLRA are "to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code §1760.

CLASS ACTION COMPLAINT

83.     Plaintiff and each member of the Class are "consumers" as defined by California Civil Code section 1761(d). Defendants' sale of its products on the Website to Plaintiff and the Class were "transactions" within the meaning of California Civil Code section 1761(e). The products purchased by Plaintiff and the Class are "goods" within the meaning of California Civil Code section 1761(a).

84.     Defendants violated and continue to violate the CLRA by engaging in the following practices prohibited by California Civil Code section 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of Defendants' branded products: "Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions." Cal. Civ. Code §1770(a)(13).

85.     Defendants made false or misleading statements of fact concerning the "existence of" and the "amounts of price reductions" because, among other things, (a) no true price reductions existed—or at the very least, any amounts of price reductions were exaggerated—in that Defendants' merchandise was rarely, if ever, previously offered for sale and/or sold at the higher Reference Prices for a reasonably substantial period of time, (b) there is no other channel through which the products have previously been offered for sale and/or sold at the false Reference Price for a reasonably substantial period of time, and (c) the Reference Prices Defendants advertise on the Website were never sold elsewhere for any other prices besides the falsely discounted sale prices at which customers bought items from Defendants.

86.     Plaintiff seeks an injunction for Defendants' violation of the CLRA to enjoin Defendants' methods, acts, and practices of deceiving customers through its false and misleading pricing scheme outlined above.

CLASS ACTION COMPLAINT

# FOURTH CLAIM FOR RELIEF

## FRAUD

### (By Plaintiff Against Defendants Individually and on Behalf of the Class)

87.     Plaintiff restates and re-alleges the foregoing paragraphs as if fully set forth herein.

88.     Defendants consistently represented to all members of the Class during that the products on the Website were being offered at a discount from a Reference Price. Defendants made this representation by displaying on the product description page for each of these products a Reference Price substantially higher than the offered selling price, which is marked down or discounted from the Reference Price by a specified percentage discount or dollar amount.

89.     Defendants' Reference Price representations are false. Among other things, Defendants' representations conveyed false information about the items Plaintiff and the Class purchased, namely that the items they purchased had sold in the recent past for a reasonably substantial period of time at the higher Reference Price displayed on Defendants' Website and/or in the prevailing market. The truth is that Defendants rarely, if ever, previously offered for sale and/or sold those products at the higher Reference Price for any reasonably substantial period of time.

90.     Defendants knew that its representations were false when they made them, or at the very least, they made the representations recklessly and without regard for their truth. In other words, Defendants knew that the products on the Website that Plaintiff and the Class purchased had rarely, if ever, sold at the substantially higher Reference Price displayed on Defendants' Website in the recent past and/or in the prevailing market.

91.     Defendants' representations were made with the intent that Plaintiff and the Class rely on the false representations and spend money they otherwise would not have spent, purchase items they otherwise would not have purchased, and/or

CLASS ACTION COMPLAINT

spend more money for an item than they otherwise would have absent the deceptive marketing scheme.

92.   Defendants engaged in this fraud to the Plaintiff's and the Class's detriment in order to increase Defendants' own sales and profits.

93.   Plaintiff and the Class reasonably relied on Defendants' representations.

94.   Absent Defendants' misrepresentations, Plaintiff and the Class would not have purchased the items they purchased from Defendants, or, at the very least, they would not have paid as much for the items as they ultimately did. Plaintiff's and the Class's reliance was a substantial factor in causing them harm.

95.   As a direct and proximate result of the above, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

96.   Defendants undertook the aforesaid illegal acts intentionally or with conscious disregard of the rights of Plaintiff and the Class, and did so with fraud, malice, and/or oppression. Based on the allegations above, Defendants' actions constituted fraud because Defendants intended to and did deceive and injure Plaintiff and the Class.

97.   Based on the allegations above, Defendants' actions constituted malice because Defendants acted with the intent to and did cause injury to Plaintiff and the Class, and also because Defendants' deceptive conduct was despicable and was done with a willful and knowing disregard of the rights of Plaintiff and the Class.

98.   Based on the allegations above, Defendants' actions constituted oppression because Defendants' deceptive conduct was despicable and subjected Plaintiff and the Class to cruel and unjust hardship in knowing disregard of their rights.

CLASS ACTION COMPLAINT

## FIFTH CLAIM FOR RELIEF

### FRAUDULENT CONCEALMENT

**(By Plaintiff Against Defendants on Behalf of the Class)**

99.   Plaintiff restates and re-alleges the foregoing paragraphs as if fully set forth herein.

100.   Defendants uniformly disclosed incomplete facts to Plaintiff and all members of the Class on the Website. Namely, Defendants disclosed a Reference Price for products on the Website by displaying on the product description page for each item, as well as the on the thumbnail displays of each product when presented as a list, a Reference Price substantially higher than the offered selling price, which is marked down or discounted from the Reference Price by a specified percentage discount or dollar amount.

101.   Defendants, however, intentionally failed to disclose other facts, making Defendants' disclosure deceptive. Specifically, Defendants failed to disclose that Defendants rarely, if ever, previously offered for sale and/or sold the products on the Website at the higher Reference Price for any reasonably substantial period of time. As a result, Defendants deceived Plaintiff and the Class into believing that they were purchasing items at a substantial markdown or discount when, in reality, the false Reference Price and discounting practice artificially inflated the true market value of the items they purchased.

102.   As a separate basis for concealment, Defendants uniformly and intentionally concealed from Plaintiff and all members of the Class that the items they purchased from Defendants had rarely, if ever, been sold by Defendants in the recent past at the substantially higher Reference Price displayed on Defendants' Website and/or in the prevailing market. These were facts known only to Defendants that Plaintiff and the Class could not have reasonably discovered.

103.   Plaintiff and the Class did not know of the concealed facts.

CLASS ACTION COMPLAINT

104. Defendants intended to deceive Plaintiff and the Class by concealing the facts described above.

105. Had the omitted information been disclosed, Plaintiff reasonably would have behaved differently. Among other things, Plaintiff would not have purchased the items they purchased from Defendants, or, at the very least, they would not have paid as much for the items as they ultimately did.

106. The omitted information was material and thus, reliance is presumed on a class-wide basis. The omitted information related to the price of the items sold and whether Plaintiff were receiving a true and genuine substantial discount or whether, instead, Plaintiff was being deceived into buying products through a pricing scheme utilizing fake, artificially inflated original, retail, or former prices, was material. A reasonable person would plainly attach importance to matters affecting pricing in determining his or her purchasing decision.

107. As a direct and proximate result of the above, Plaintiff and the Class have been harmed and suffered damages in an amount to be proven at trial.

108. Defendants undertook the aforesaid illegal acts intentionally or with conscious disregard of the rights of Plaintiff and the Class, and did so with fraud, malice, and/or oppression. Based on the allegations above, Defendants' actions constituted fraud because Defendants intended to and did deceive and injure Plaintiff and the Class. Based on the allegations above, Defendants' actions constituted malice because Defendants acted with the intent to and did cause injury to Plaintiff and the Class, and also because Defendants' deceptive conduct was despicable and was done with a willful and knowing disregard of the rights of Plaintiff and the Class. Based on the allegations above, Defendants' actions constituted oppression because Defendants' deceptive conduct was despicable and subjected Plaintiff and the Class to cruel and unjust hardship in knowing disregard of their rights.

CLASS ACTION COMPLAINT

## SIXTH CLAIM FOR RELIEF

### BREACH OF CONTRACT

### (By Plaintiff against Defendants Individually and on Behalf of the Class)

109.   Plaintiff restates and re-alleges the foregoing paragraphs as if fully set forth herein.

110.   Plaintiff and members of the Class each entered into a contract with Defendants when they placed purchase orders on the Website.

111.   The contracts provided, in part, that Plaintiff and members of the Class would pay Defendants money for a specified product, such as clothing. In exchange, Defendants were required to provide Plaintiff and class members with the specific product having a market value equal to the Reference Price displayed on the Website. Defendants further contracted with Plaintiff and class members to provide a discount for the specific product equal to the difference between the price paid and the Reference Price.

112.   Defendants, as the manufacturer, marketer, distributor, supplier, and/or seller of its products, provided material, written warranties that the products purchased by Plaintiff and the class members had a prevailing market value equal to the Reference Price. This warranty was party of the basis of the bargain upon which Plaintiff and members of the Class reasonably relied.

113.   Plaintiff and class members satisfied their end of their contract with Defendants by paying Defendants the money owed.

114.   Defendants, however, breached their contract and warranties with Plaintiff and class members by failing to provide a product having a market value equal to the Reference Price and by failing to provide the promised discount from the prevailing price of the product.

115.   As a direct and proximate result of Defendants' breach of contract and breach of warranty, Plaintiff and members of the Class were deprived of the benefit

CLASS ACTION COMPLAINT

of their bargained exchange and have suffered damages in an amount to be established at trial.

## VII.   PRAYER FOR RELIEF

116.   WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follow:

**ON THE FIRST CLAIM FOR RELIEF FOR VIOLATION OF THE UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE §§17200 _et seq._)**

A.   For an order certifying that the action be maintained as a class action under Rule 23(b)(2), 23(b)(3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

B.   For an injunction putting a stop to the deceptive and misleading conduct described herein and ordering Defendants to correct its deceptive and misleading advertising and pricing practices.

C.   For an award of restitution and disgorgement of moneys paid that Defendants obtained as a result of its unlawful, unfair, and fraudulent business practices, and as a result of its unfair, deceptive, untrue, and misleading advertising, all as described above.

D.   For an award of equitable and declaratory relief.

E.   For pre and post judgment interest and costs of suit incurred herein.

F.   For attorneys' fees incurred herein pursuant to California Code of Civil Procedure section 1021.5, or to the extent otherwise permitted by law.

G.   For such other and further relief as the Court may deem just and proper.

**ON THE SECOND CLAIM FOR RELIEF FOR VIOLATIONS OF THE FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE §§17500 _et seq._**

H.   For an order certifying that the action be maintained as a class action under Rule 23(b)(2), 23(b)(3), and/or Rule 23(c)(4) of the Federal Rules of Civil

Procedure, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

I.   For an injunction putting a stop to the deceptive and misleading conduct described herein and ordering Defendants to correct its deceptive and misleading advertising and pricing practices.

J.   For an award of restitution and disgorgement of moneys paid that Defendants obtained as a result of its unlawful, unfair, and fraudulent business practices, and as a result of its unfair, deceptive, untrue, and misleading advertising, all as described above.

K.   For an award of equitable and declaratory relief.

L.   For pre and post judgment interest and costs of suit incurred herein.

M.   For attorneys' fees incurred herein pursuant to California Code of Civil Procedure section 1021.5, or to the extent otherwise permitted by law.

N.   For such other and further relief as the Court may deem just and proper.

**ON THE THIRD CLAIM FOR RELIEF FOR VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE §§1750 *et seq.*)**

O.   For an order certifying that the action be maintained as a class action under Rule 23(b)(2), 23(b)(3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

P.   For an injunction putting a stop to the deceptive and misleading conduct described herein and ordering Defendants to correct its deceptive and misleading advertising and pricing practices.

Q.   For an award of equitable and declaratory relief.

R.   For attorneys' fees incurred herein pursuant to California Civil Code section 1780, or to the extent otherwise permitted by law.

S.   For such other and further relief as the Court may deem just and proper.

CLASS ACTION COMPLAINT

## ON THE FOURTH CLAIM FOR RELIEF FOR FRAUD (AFFIRMATIVE MISREPRESENTATIONS)

T.     For an order certifying that the action be maintained as a class action under Rule 23(b)(2), 23(b)(3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

U.     For compensatory damages in an amount to be proven at trial.

V.     For punitive damages in an amount sufficient to punish Defendants and to deter it from engaging in wrongful conduct in the future.

W.     For pre and post judgment interest and costs of suit incurred herein.

X.     For attorneys' fees incurred herein pursuant to California Code of Civil Procedure section 1021.5, or to the extent otherwise permitted by law.

Y.     For such other and further relief as the Court may deem just and proper.

## ON THE FIFTH CLAIM FOR RELIEF FOR FRAUDULENT CONCEALMENT

Z.     For an order certifying that the action be maintained as a class action under Rule 23(b)(2), 23(b)(3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

AA.     For compensatory damages in an amount to be proven at trial.

BB.     For punitive damages in an amount sufficient to punish Defendants and to deter it from engaging in wrongful conduct in the future.

CC.     For pre and post judgment interest and costs of suit incurred herein.

DD.     For attorneys' fees incurred herein pursuant to California Code of Civil Procedure section 1021.5, or to the extent otherwise permitted by law.

EE.     For such other and further relief as the Court may deem just and proper.

## ON THE SIXTH CLAIM FOR RELIEF FOR BREACH OF CONTRACT

FF.  For an order certifying that the action be maintained as a class action under Rule 23(b)(2), 23(b)(3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

GG.  For compensatory damages in an amount to be proven at trial.

HH.  For pre and post judgment interest and costs of suit incurred herein.

II.  For such other and further relief as the Court may deem just and proper.

Dated: March 24, 2026                    CARTER ARNETT PLLC


                                         By: /s/ Omer Salik
                                              Omer Salik
                                         Attorneys for Plaintiff
                                         Marisa Paolone


## JURY DEMAND

Plaintiff, on behalf of herself and all others similarly situated, hereby demands a trial by jury on all triable issues.


Dated:  March 24, 2026                   CARTER ARNETT PLLC


                                         By:  /s/ Omer Salik
                                              Omer Salik

                                         Attorneys for Plaintiff
                                         Marisa Paolone

CLASS ACTION COMPLAINT

# Exhibit A

Case 2:26-cv-03142   Document 1   Filed 03/24/26   Page 34 of 43   Page ID #:34







Case 2:26-cv-03142    Document 1    Filed 03/24/26    Page 37 of 43    Page ID #:37









Case 2:26-cv-03142   Document 1   Filed 03/24/26   Page 41 of 43   Page ID #:41





